[Civ. No. 3488. Fourth Dist. Oct. 28, 1948.]

In re ROBERT LEROY SANDERS, a Minor. THOMAS MARCELLUS HOBGOOD et al., Respondents, v. JUANITA SANDERS FLATLEY, Appellant.

Ray H. Overacker for Appellant.

Leroy P. Anderson and Donald Dungan for Respondents.

BARNARD, P. J.—This is an appeal by the mother of the minor from an order of the superior court, sitting as a juvenile court, declaring Robert LeRoy Sanders free from her custody and control.

The minor was born May 28, 1937, and was 20 days less than 10 years old when this order was made. The parents of the minor were divorced in October, 1938, the custody of the minor and an older sister being given to their paternal grandmother. In October, 1940, an order was entered giving custody of the children to this appellant, and ordering the father to pay her $20 a month for their support. Apparently, this last order was never complied with.

On December 9, 1940, the appellant placed Robert in the home of Mr. and Mrs. Hobgood, the respondents in this proceeding, agreeing to pay them for his board and care. In December, 1940, and January, 1941, she paid them $13.50, but has paid them nothing further. The boy has remained there ever since and, as the court found, the Hobgoods have provided for him with the exception that through legal proceedings against the father they collected from him $100 in 1943, and $850 in 1944. Nothing was paid by anyone for more than three years before this order was made.

Between December, 1940, and May, 1942, the appellant, who was working as a waitress in Orange and Los Angeles Counties, called on Robert at the home of the Hobgoods at Costa Mesa on the average of once every three or four months.

She was then in poor financial circumstances and in poor health part of the time. On May 2, 1942, she married James Flatley, who was in military service. Until 1944, they lived near Los Angeles and she continued to visit Robert once every three or four months. In October, 1943, her new husband adopted Robert's older sister. In consideration of her former husband's consent to this adoption the appellant signed an instrument by which she agreed to waive her guardianship rights and to "grant" the custody of Robert to her former husband. Before signing, she was advised that this document had no binding legal effect and that the matter of Robert's custody would remain for the determination of the court.

In July, 1944, the appellant went with her husband to New Jersey. She did not then go to see Robert although she had last seen him in March, 1944. In February, 1945, she went to Indiana where she remained until May. From May to October, 1945, she was in Texas with her husband. He was then discharged from military service and they returned to Los Angeles where they still live. From 1940 to November, 1946, the appellant was in ill health the greater part of the time but was able to do her own housework except for brief periods when she was in the hospital.

While she was in New Jersey in 1944, the appellant wrote to the Hobgoods and the child several times. At Christmas in 1944, she wrote a letter to Robert and sent him $1.00 for a Christmas present. She also sent him a card early in 1945, which was never received. During the remainder of 1945, and during the entire year of 1946, she did not communicate either with Robert or the Hobgoods. In June, 1946, she inquired of a relative and was told that this relative thought the Hobgoods were then living near Perris. She and her husband drove to Perris, inquired of a number of people and looked at some of the mail boxes for the name of Hobgood, but did not find it. No further effort was made to locate the boy until December, 1946, when the appellant phoned to her former husband and was referred to a lawyer who was representing the Hobgoods. She was told by the lawyer that they were temporarily in Whitewater. Having been told that this proceeding was being started, she went to Whitewater in January, 1947, but did not find the Hobgoods as they had gone to Santa Ana.

This proceeding was started on January 23, 1947. An adoption proceeding started by the Hobgoods in January, 1946, is still pending. The court found the facts as above

stated, and found that Robert had been left by his mother in the care and custody of the Hobgoods for the period of more than one year without any communication from her and with the intent on her part to abandon him. It was also found that Robert had been so left by his mother without any provision for his support for a period of more than one year. However, it was further found that such failure to provide was not, in itself, sufficient to show an intent to abandon since she had given the custody of him to her former husband by the instrument signed on October 13, 1943. While it is not important here, this latter finding is erroneous since no court action was taken to change the custody and the legal custody and obligation still remained with the appellant, and she admits that she was reminded of this at the time. The father of the minor was made a party to this proceeding and appeared at the hearing. The order provided that the minor be declared free from the custody and control of his mother, and made no reference to the father doubtless because custody and control had previously been taken from him by court order. This appeal followed.

There is little dispute as to what the law is and it would serve no useful purpose to review the cases cited by respective counsel, in which varying sets of circumstances have led to different results. The main question on this appeal is as to whether the evidence sufficiently supports the findings and conclusions that this minor had been left without any communication from his mother for the period of more than one year with the intent on her part to abandon him,' and that he is a person who should be declared free from the custody and control of his mother. ■■■ Section 701(a) of the Welfare and Institutions Code provides that a minor who has been left in the care and custody of another, without any provision for his support or without communication from either or both of his parents for the period of one year, with intent on the part of such parent or parents to abandon him, shall be deemed abandoned and declared free from such parental control. That section further provides that such a failure to provide or failure to communicate for the period of one year is presumptive evidence of an intent to abandon. While this presumption may be overcome by opposing evidence the question whether an intent to abandon has existed for a period of a year is a question of fact for the trial court. (*In re Creely,* 70 Cal.App.2d 186 [160 P.2d 870] ; *In re Peterson,* 56 Cal.App.2d 791 [133 P.2d 831].)

The appellant argues that certain portions of the evidence completely disprove that there was any intention on her part to abandon this minor. It is first contended that this is disproved by the fact that she signed the instrument purporting to give the custody of Robert to her former husband only because she believed it to be ineffective in the absence of a court order. While this instrument was legally ineffective in the absence of a court order, which was never entered, it is very suggestive on the question of her intent. It clearly appears in writing that she was willing to, and did, waive all right to guardianship over the person of the boy, and that she agreed to give custody of him to her former husband in express consideration of his consent to the adoption of the other child. The fact that her former husband did not consummate the matter by securing a court order changing the custody does not affect this clear cut evidence of her intent and purpose in the matter. It may not be assumed that she was acting fraudulently and that, in order to obtain an advantage over her former husband, she signed this instrument while entertaining an intent directly contrary to that expressed therein.

It further appears that early in 1944, before the appellant went east with her husband, Mr. Hobgood spoke to her about his desire to adopt the boy and she replied "You can keep him, but I won't sign any papers." The appellant testified that every time she saw the respondents they would try to talk her into signing the boy over to them, and she refused. While this evidence creates some conflict it is not, in itself, controlling. The same is true of the appellant's testimony that when she asked Mr. Hobgood for Robert he always told her she would have to pay for his back board. Finally, in this connection, evidence that the appellant endeavored to find Robert after she returned to California is relied on. This is sufficiently answered by what the court said in his decision:

"Here, we find from January, 1945, to June of 1946, at least, no communication directly or indirectly between the mother and this child, and then only an inquiry from the sister of her former husband as to where the child was, and a trip which didn't seem to be very well conceived, to Perris, to look for mail boxes that might contain the name of the Hobgoods after that lapse of seventeen months, and then at least another six months, or such a matter before anything further was done."

On the other hand, the facts found by the trial court justify a contrary inference with respect to the appellant's intention and, of course, the evidence relating to the situation during the last 12 months preceding the bringing of this proceeding is of primary importance. The appellant has allowed the boy to remain in the respondents' home continuously since December, 1940. She remarried, and shortly thereafter took an active part in having an older child adopted by her new husband. Although her circumstances and condition had substantially changed she not only made no effort to take the boy into her own home but solemnly agreed to give up the custody of him which had been awarded to her by the court. Between 1940 and 1944, while she was living in or near Los Angeles, only a short distance from the respondents' home, she visited the boy only three or four times a year and then only for an hour or two at a time. She went east in 1944 with her husband without visiting the boy, whom she had not seen for four months. During the next year and a half she communicated with the boy only a few times. She returned to California in October, 1945, and for 16 months did not communicate either with Robert or with the Hobgoods. The two efforts she claims to have made during this time to get in touch with the boy were not very impressive, as the court pointed out. During a period of seven years she paid nothing to the respondents for the support of the child, although she was responsible for his custody all of this time under court order. She seems not to have taken this responsibility very seriously. During the last three years before this order was made nothing was paid for the support of the boy by anybody.

In our opinion, the statutory presumption and the evidence, including the reasonable inferences therefrom, amply sustain the controlling finding in question.

It is further argued that four of the findings do not support the judgment. In these findings it was found that the appellant was advised that the waiver of custody she signed had no legal effect and that the matter of the child's custody would remain for the court to determine; that the appellant had several periods of hospitalization between 1940 and 1946 and was in ill health the greater part of the time; that while she was living in the east in 1944 and 1945 she wrote some letters to her mother requesting her mother to visit the child; and one stating what effort she made to find Robert after she returned to California. The court fully and

fairly found all of the facts shown by the testimony but these findings are not controlling over other findings and other evidence which fully support the order made.

 Some contention is made that the order appealed from is ineffective as a matter of law because it declared Robert to be free from the custody of his mother but said nothing about his father, who was made a party to the action. It is argued that as a result the father retains the sole custody of Robert. *In re Edwards,* 208 Cal. 725 [284 P. 916] is relied on in support of the proposition that the findings of abandonment must refer and relate to both parents. In the instant case the father had been deprived of the custody and control of the minor by court order, and sole custody had been given to the appellant. This order had never been changed and it here appeared, as suggested and discussed in the Edwards case, that the custody of this minor had been taken away from the father and given to the parent charged with committing the acts of abandonment. Moreover, through an order to show cause, which was heard jointly with this proceeding, the father had sought to have the custody of Robert awarded to him. This was denied and the order to show cause discharged, the court declaring that he could not, under the showing made, declare the father to be a proper custodian.

The order appealed from is affirmed.

Griffin, J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 23, 1948.